SOBRINO DE IZQUIERDO, INC., Plaintiff and Appellant, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 7572. Argued June 10, 1938.—Decided June 14, 1939.

*R. Díaz Collazo* and *Fiddler, Córdova & McConnell,* for appellant. *B. Fernández García, Attorney General* and *Emilio de Aldrey, Assistant Attorney General,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Sobrino de Izquierdo, Inc., appeals from an adverse judgment in an action brought to recover taxes paid under protest. Two acts are involved. The first of these acts was approved May 15, 1936. It is known as the Alcoholic Beverage Law (p. 610). The second was approved June 30, 1936. It is known as The Spirits and Alcoholic Beverages Act (Third Special Session, p. 44). The question is whether Tuborg Double Stout, an imported malt tonic, was subject to the tax.

■ At the threshold of the trial, the parties stipulated that Tuborg Double Stout contained two-tenths of 1 per cent of alcohol by volume, and that it was a malt product. The evidence for plaintiff tended to show that:

Tuborg Double Stout was prescribed by physicians for women during the period of gestation, for feeble patients and for children; for patients who needed a tonic or nutritive treatment. This was because of the large proportion of malt content; alcoholic beverages are injurious to women during the period of gestation. The percentage of alcohol contained in Tuborg was so small that it was harmless. Tuborg was used only as a tonic and as a nutrious product. Two-tenths of 1% of alcohol was the equivalent of four drops to the glass. The first step in the making of a malt tonic is the germination of the barley and the addition of hops. This is followed by fermentation and later by de-alcoholization. Most of the alcohol is removed; complete elimination is impossible, the finished product contains very little alcohol.

Tuborg was sold in bottles with a label which informed the purchaser that the contents were non-alcoholic. The dose also appeared on the label.

There was no evidence for the defense.

The gist of the argument for appellant is this:

The purpose of the law was to regulate and tax the production and sale of alcoholic beverages. It was not the purpose of the law to tax products such as Tuborg Double Stout. Tuborg was not an alcoholic beverage but a tonic, a medicinal and nutritious product.

The necessity for regulating the production and sale arose out of the repeal of the Eighteenth Amendment, of the Volstead Act and of certain provisions in our own Organic Act. Hence, the Act "To provide revenues for the People of Puerto Rico through the levying of certain internal-revenue taxes on each liter of beer, wine, or substitutes therefor, brought into, or manufactured, used, sold, or otherwise disposed of for consumption in Puerto Rico, and of certain license taxes on certain occupations or industries connected with such products; to cover said taxes or fees into the general funds of the Insular Treasury, and for other purposes". (Session Laws 1933, 206.) This was followed by other laws including the two acts of 1936. The law of 1933, filled a gap (*llenaba el vacío*) left in our tax laws by the repeal of prohibition. It taxed things not previously taxed because the production and sale thereof had been prohibited. It was not the primary purpose of the legislature in 1936, to tax things which had been the legitimate subject of commerce during the era of prohibition. The acts of 1936, did not profess to tax medicinal or nutritious products containing alcohol. Tuborg is a medicinal and nourishing product. It is not used as an alcoholic beverage, although it contains a small percentage of alcohol. It does not come within the definition of beer contained in Section 3 of the Act approved May 15, 1936, notwithstanding the fact that it is apparently within the letter of that definition since it is a fermented product of malta and contains alcohol. That definition should be construed in the light of the legislative intention not to include medicinal products not ordinarily regarded as alcoholic beverages. It was not the intention of the Legislature to tax medicinal products: first, because, notwithstanding the hundreds of medicines containing alcohol, often in large proportions, the law does not tax any medicinal product as shown by Section 4 of the Act; second, because the history of this post Volstead legislation discloses a legislative intention to tax alcoholic beverages, the sale of which was unlawful while prohibition was in force, not medicine containing alcohol, the sale of which had never been prohibited; third, because Section 21 of the Act itself expressly exempts distilled spirits when used in the compounding and manufacture of medicines and food products. The legislature did not deem it necessary to exempt medicinal products *eo nomini* because Section 4 of the law placed no tax on such products.

Since the repeal of prohibition, medicinal products containing alcohol need not be regarded with suspicion. The producer, seller

or consumer of alcoholic beverages now has nothing to hide. A sinister purpose need not now be imputed to the producer, seller or consumer of medicinal products. While brandy, whisky and other alcoholic beverages may have certain medicinal properties, such properties are due to the alcoholic content. The medicinal properties of Tuborg are independent of its alcoholic content. The medicinal properties of whisky and brandy are secondary. Those beverages are fundamentally alcoholic. They are sold and consumed as such. Tuborg has none of the characteristics of an alcoholic beverage in the ordinary sense of the word. It is exclusively a medicinal food product. Scientific resources are exhausted in an effort to eliminate the alcohol. When there is doubt as to whether a particular article is subject to the payment of taxes, the doubt should be decided in favor of the exemption of the article. *P. R. Distilling Co.* v. *Treasurer of P. R.*, 32 P.R.R. 530.

Section 4 of the Act approved May 15, 1936, provides for an internal-revenue tax:

"4. On all beers, lagers, ales, porters, malts and malt extracts, and other similar fermented or unfermented products the alcoholic content of which is 1½ per cent or less by volume, a tax of 15 cents a gallon and a like rate for any fractional part thereof; *Provided,* That when the alcoholic content of such products exceeds 1½ per cent by volume, the tax shall be 30 cents per gallon and a like rate for any fractional part thereof; *Provided, further,* That if such products containing more than 1½ per cent of alcohol by volume are sold in containers of five (5) gallons or more, the tax shall be 20 cents per gallon and a like rate for any fractional part thereof."

Section 7 provides for the licensing of wholesale and retail dealers in alcoholic beverages.

Beer and alcoholic beverages are defined in Section 3 as follows:

"(12) *Beer* means any fermented or unfermented beverage of whatever name or description manufactured from malt either wholly or partially or from any substance thereof which contains alcohol.

"(15) *Alcoholic Beverages* shall include all spirits, rectified spirits, beers and wines which have been reduced to a potable proof for human consumption."

Section 21 reads as follows:

"The taxes prescribed by this Act shall not apply to distilled spirits obtained in accordance with such provisions as the Treasurer may prescribe therefor when used for industrial purposes in the manufacture of denatured alcohol, medicinal, pharmaceutical, antiseptic and toilet preparations, the compounding and manufacture of medicines, flavoring extracts, syrups and food products; nor when used for scientific, chemical, mechanical and industrial purposes; provided such products are unfit for the manufacture of alcoholic beverages."

Paragraph 4 of Section 4, supra, reappears in a somewhat elaborated form as subdivisions (*a*), (*b*) and (*c*) of paragraph 4 of Section 4 of Act number 6, approved June 30, 1936. Alcoholic beverages and beer are again defined by paragraphs 13 and 15 of Section 3 of the later Act as follows:

"(13) *Alcoholic beverages:* All spirits and rectified spirits that have been reduced to a proof suitable for human consumption, and liquors and beverages that contain alcohol, whether produced by fermentation or distillation, including wine, beer, and cider."

"(15) *Beer:* Any fermented or unfermented beverage of whatever name or description manufactured, either wholly or partially, from malt or from any substitute therefor, which contains alcohol."

Section 21 of the first Act reappears as Section 25 of the second. It now reads:

"The taxes prescribed by this Act shall not be collected on such distilled spirits despatched by a distillery and obtained by any person in accordance with the provisions of the regulations prescribed by the Treasurer, as are to be devoted to industrial, scientific, medicinal, or chemical purposes."

Tuborg is a fermented beverage. It is manufactured from malt. It contains alcohol. It is "beer" within the meaning of that term as defined by the statute. It is a "beer" which has been reduced to potable proof for human consumption. It is a beverage that contains alcohol and it is produced by fermentation. It is both a beer and an

alcoholic beverage as those terms are twice defined by the Insular Legislature in two successive statutes. In any event, it is a malt extract or a similar fermented product, the alcoholic content of which is less than 1½ per cent by volume. Hence, it is subject to the tax imposed by paragraph 4 of Section 4 of the first Act and by subdivision (a) of paragraph 4 of Section 4 of the second Act.

■■ Tuborg Double Stout is not "distilled spirits". It is not "obtained in accordance with such provisions as the Treasurer may prescribe therefor". It is not used in the manufacture of medicinal preparations or in the compounding and manufacture of medicines and food products. Nor is there anything to show that the products in which Tuborg might be so used would be "unfit for the manufacture of alcoholic beverages."

Section 25 of the later law does exempt "such distilled spirits...as are to be devoted to...medicinal...purposes", when "dispatched by a distillery and obtained by any person in accordance with the provisions of the regulations prescribed by the Treasurer." "Beer,...malt extracts, and other similar fermented....products" specified in subdivision (a) supra, are not exempt under the terms of Section 25 when "devoted to....medicinal....purposes". Whether malt extracts or other similar products containing a given percentage of alcohol—which are intended and used only for medicinal purposes and cannot be classified as beer or as alcoholic beverages in the usual and ordinary sense of those terms—should be exempt from taxation, is a question for the legislature, not for the courts.

The argument for appellant is plausible enough, or would be plausible enough, if there were any doubt about the meaning of the language used in the two legislative enactments. That language, however, is perfectly plain. It leaves no room for doubt or for construction. What we have said disposes of the first and second assignments.

The third and last assignment goes to the admissibility of certain evidence excluded by the district judge. In the view we take of the case, the error, if any, was harmless.

The judgment appealed from must be affirmed.

Mr. Justice Travieso and Mr. Justice De Jesús took no part in the decision of this case.